UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>James Kalloch</u>,
     Claimant

     v.                                 Case No. 14-cv-520-SM
                                          Opinion No. 2016 DNH 065

<u>Carolyn W. Colvin, Acting Commissioner</u>,
<u>Social Security Administration</u>,
     Defendant

**O R D E R**

Pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), claimant, James Kalloch, moves to reverse or vacate the Acting Commissioner's decision denying his applications for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 423, and Supplemental Security Income Benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383c. The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is granted, in part, and the Acting Commissioner's motion is denied. The matter is remanded for further proceedings consistent with this order.

**Factual Background**

I.  <u>Procedural History</u>.

    In 2009, claimant filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that he had been unable to work since May 1, 2007, due to chronic illness, which included Lyme disease and, later, Post-Treatment Lyme Disease Syndrome.  That application was denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").  Following the first hearing in this matter, in May of 2011, the ALJ denied claimant's applications for benefits.  On appeal to this court (Laplante, C.J.), claimant advanced two arguments.  First, he asserted that, at step two of the sequential analysis, the ALJ erred in failing to conclude that he suffers from a "severe" mental health impairment.  The court concluded that argument "does not appear to be meritorious" but declined to address it in any detail.  As to claimant's second assertion - that the ALJ failed to properly document her conclusion that claimant's subjective complaints of disabling pain were less than fully credible - the court was more receptive.  Specifically, the court concluded that remand was appropriate, so the ALJ might more fully document her credibility finding, including claimant's statements about disabling migraine pain.  <u>Kalloch v. Astrue</u>, 11-cv-522-JL, 2012 WL 4930986 (D.N.H. Sept. 18, 2012) ("<u>Kalloch I</u>").

Accordingly, in April of 2013, claimant, his non-attorney representative, and a vocational expert again appeared before the ALJ.  But, the ALJ decided she wished to obtain additional medical evidence, so she sent claimant's medical records, as well as a set of interrogatories, to an independent medical expert, Dr. Charles Plotz.  After Dr. Plotz submitted his responses, the ALJ convened a third hearing, so claimant might have the opportunity to cross examine the doctor.  Subsequently, in a decision dated April 17, 2014, the ALJ again concluded that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of her decision.

Claimant then filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence. Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 13).  In response, the Acting Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 15).  Those motions are pending.

II.  Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 20), need not be

recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.


## Standard of Review

I.   "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  See 42 U.S.C. §§ 405(g), 1383(c)(3).  See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

This court's review of the ALJ's decision is, therefore, both limited and deferential.  The court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether he is disabled under the Act. Rather, the court's inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  Provided the ALJ's findings are properly supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  Such is the nature of judicial review of disability benefit determinations.  See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981).


II.  The Parties' Respective Burdens.

An individual seeking SSI and/or DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The Act

places a heavy initial burden on the claimant to establish the
existence of a disabling impairment.  See Bowen v. Yuckert, 482
U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human
Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden,
the claimant must prove, by a preponderance of the evidence, that
his impairment prevents him from performing his former type of
work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985);
Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If
the claimant demonstrates an inability to perform his previous
work, the burden shifts to the Commissioner to show that there
are other jobs in the national economy that he can perform, in
light of his age, education, and prior work experience.  See
Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2
(1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(f) and
416.912(f).

     In assessing a disability claim, the Commissioner considers
both objective and subjective factors, including: (1) objective
medical facts; (2) the claimant's subjective claims of pain and
disability, as supported by the testimony of the claimant or
other witnesses; and (3) the claimant's educational background,
age, and work experience.  See, e.g., Avery v. Secretary of
Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986);

<u>Goodermote v. Secretary of Health & Human Services</u>, 690 F.2d 5, 6
(1st Cir. 1982).  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  <u>See also</u> 42 U.S.C. § 1382c(a)(3)(B).


With those principles in mind, the court reviews claimant's
motion to reverse and the Acting Commissioner's motion to affirm
her decision.


## Background - The ALJ's Findings

In concluding that claimant was not disabled within the
meaning of the Act, the ALJ began with the mandatory five-step
sequential evaluation process described in 20 C.F.R. §§ 404.1520
and 416.920.  <u>See generally</u> <u>Barnhart v. Thomas</u>, 540 U.S. 20, 24
(2003).  Accordingly, she first determined that claimant had not
been engaged in substantial gainful employment since his alleged
onset of disability: May 1, 2007.  Admin. Rec. at 433.  Next, she
concluded that claimant suffers from the following medically
determinable impairments: "headaches, anxiety disorder, and

7

depressive disorder." <u>Id</u>.  Nevertheless, the ALJ concluded that
those impairments, regardless of whether they were considered
alone or in combination, did not significantly limit claimant's
ability to perform basic work-related activities.  <u>Id.</u> at 437.
Accordingly, at step two of the sequential analysis, the ALJ
determined that claimant was not disabled, as that term is used
in the Act.

### Discussion

Claimant challenges the ALJ's decision on several grounds,
but his case rises or falls largely on the following two
questions: first, whether there is substantial evidence in the
record to support that ALJ's conclusion that claimant failed to
demonstrate that he actually suffers from a medically
determinable impairment – Post-Treatment Lyme Disease Syndrome
("PTLDS"); and, second, whether substantial evidence supports the
ALJ's conclusion that claimant's headaches do not constitute a
"severe impairment" – that is, an impairment that significantly
limits claimant's physical or mental ability to perform basic
work activities.  <u>See</u> 20 C.F.R. § 404.1521.

### I.   <u>PTLDS and Medically Determinable Impairments</u>.

As a threshold matter, to be disabled, a claimant must
establish that he or she is unable "to engage in any substantial

gainful activity by reason of any <u>medically determinable physical or mental impairment</u>."  42 U.S.C. § 416(i)(1) (emphasis supplied).  <u>See also</u> 42 U.S.C. § 1382c(3)(A) (same).  <u>See generally</u> <u>Thomas</u>, 540 U.S. at 24 ("At step two, the SSA will find nondisability unless the claimant shows that he has a 'severe impairment,' defined as 'any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.'" (quoting 20 C.F.R. §§ 404.1520(c), 416.920(c)).  Moreover, as the pertinent regulations make clear, a claimant's "impairment must result from anatomical, physiological, or psychological abnormalities <u>which can be shown by medically acceptable clinical and laboratory diagnostic techniques</u>.  A physical or mental impairment <u>must be established by medical evidence</u> consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms."  20 C.F.R. § 404.1508 (citing 20 C.F.R. §§ 404.1527 and 404.1528) (emphasis supplied).  The regulations then describe the difference between "symptoms," "signs," and "laboratory findings," as follows:

> (a) Symptoms are your own description of your physical or mental impairment.  [A claimant's] statements alone are not enough to establish that there is a physical or mental impairment.
>
> (b) Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from [the claimant's] statements (symptoms).  Signs must be shown by medically acceptable clinical

diagnostic techniques.  Psychiatric signs are medically
demonstrable phenomena that indicate specific
psychological abnormalities, e.g., abnormalities of
behavior, mood, thought, memory, orientation,
development, or perception.  They must also be shown by
observable facts that can be medically described and
evaluated.

(c) Laboratory findings are anatomical, physiological,
or psychological phenomena which can be shown by the
use of medically acceptable laboratory diagnostic
techniques.  Some of these diagnostic techniques
include chemical tests, electrophysiological studies
(electrocardiogram, electroencephalogram, etc.),
roentgenological studies (X-rays), and psychological
tests.

20 C.F.R. § 404.1528.

Here, to assist her in resolving claimant's assertion that
he was disabled by reason of PTLDS, the ALJ secured the services
of an independent medical expert, Dr. Charles Plotz.  Dr. Plotz
is a board-certified internist, specializing in rheumatology.  He
is, among other things, a Fellow in the American College of
Physicians and the author of 175 articles published in peer-
reviewed journals.  See Admin. Rec. at 733, Consolidated
Curriculum Vitae.  He is also an expert in the diagnosis and
treatment of Lyme disease, who trained with Dr. Stephen Malawista
- the physician credited as being a co-discover of the disease.
After reviewing claimant's medical record, Dr. Plotz concluded
that claimant "does not have significant rheumatologic disease

10

and I cannot make the diagnosis of 'chronic Lyme disease.'"
Admin. Rec. at 956.[1]

The ALJ credited that opinion, noting (among other things)
that none of claimant's treating physicians had ever diagnosed
him with PTLDS, nor did any document clinical abnormalities or
other signs consistent with PTLDS.  Id. at 435.  Consequently,
she concluded that, "In the absence of a diagnosis [of PTLDS] and
the absence of medical abnormalities documented by clinical signs
and symptoms, I am constrained by the record to find that the
claimant does not have a medically determinable impairment."  Id.

Claimant asserts that Dr. Plotz's opinion – that claimant
does not suffer from PTLDS – is inconsistent with the medical
record.  But that does not appear to be the case.  For example,
in May of 2009, Dr. James Noble (Concord Hospital, Infectious
Disease) concluded that, "It's fairly clear that [claimant's]
symptoms are not caused by a tick-borne infectious disease."
Admin. Rec. at 280.  Similarly, in December of 2013, Dr. Durand
(the physician who originally suggested claimant may suffer from
PTLDS, id. at 417) eventually concluded that, "Lyme Disease from
2004 is probably totally cleared, perhaps with residual effect

---

[1]   Parenthetically, the court notes that the parties and Dr.
Plotz have used the phrases "chronic Lyme disease," "persistent
Lyme disease," and PTLDS interchangeably.  Id. at 453.

but I doubt active infection as no response to 18 months antibiotic [treatment].  Will stop all antibiotics and suggest psychology/psychiatry follow up at this point the main problem is anxiety." Admin. Rec. at 961.

As the regulations make clear, a claimant's subjective complaints of symptoms cannot, standing alone, establish that he or she suffers from a physical or mental impairment.  Indeed,

> Although the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations further provide that <u>under no circumstances may the existence of an impairment be established on the basis of symptoms alone</u>.  Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.

> No symptom or combination of symptoms by itself can constitute a medically determinable impairment.  In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual <u>must be found not disabled at step 2</u> of the sequential evaluation process set out in 20 C.F.R. §§ 404.1520 and 416.920.

<u>Titles II & XVI: Symptoms, Medically Determinable Physical & Mental Impairments, & Exertional & Nonexertional Limitations</u>, SSR 96-4P, 1996 WL 374187 at *1-2 (S.S.A. July 2, 1996) (footnote omitted).

12

Given the evidence of record, the court cannot conclude that the ALJ erred in determining, at step two, that claimant does not suffer from PTLDS.

II.  Claimant's Migraine Headaches.

Next, the ALJ concluded that while claimant does suffer from impairments other than PTLDS, they are not "severe" – that is, they do not significantly limit his ability to perform basic work activities.  Specifically, she noted that, "The record does show that [claimant] was diagnosed with depression and anxiety, as well as with headaches.  He received treatment for these conditions, but the record does not show that he had more than a mild limitation in activities of daily living, social functioning, or concentration, persistence and pace."  Admin. Rec. at 438.  Claimant challenges that finding as it relates to his migraine headaches, noting that they are well-documented in the record, respond only intermittently (and with varied results) to medications, and are, at a minimum, sufficient to meet the de minimus standard imposed at step two of the sequential analysis. See, e.g. May v. Soc. Sec. Admin. Comm'r, 125 F.3d 841 (1st Cir. 1997) (per curiam) (unpublished table decision) ("Under Social Security Ruling 85-28, a claim may be denied at step 2 for lack of a severe impairment only where medical evidence establishes only a slight abnormality or combination of slight abnormalities

which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education or work experience were specifically considered.  Ruling 85-28 clarifies that the step two severity requirement is intended to do no more than screen out groundless claims.") (citations omitted).

Typically, arguments of the sort advanced by claimant can be resolved fairly easily.  Provided the ALJ continues the sequential analysis and considers those impairments previously deemed "not severe" later in the analysis, this court has consistently held that any error at step two was harmless.  See, e.g., Chabot v. U.S. Soc. Sec. Admin., No. 13-CV-126-PB, 2014 WL 2106498, at *9 (D.N.H. May 20, 2014) (collecting cases).  Here, however, because the ALJ concluded that none of claimant's impairments was severe, she ended her analysis and concluded that claimant was not disabled.  Consequently, the court must carefully scrutinize her step two conclusion (which, once again, brings into consideration her determination that claimant's subjective complaints of disabling headache pain were not entirely credible).  See Kalloch I (remanding this proceeding for a more thorough analysis of claimant's credibility, particularly as it relates to claimant's migraine headaches).

In discounting claimant's subjective complaints about the
intensity, duration, and disabling effect of his migraines, the
ALJ noted that: (1) despite claims that his migraines could last
up to a week, claimant never sought "emergency treatment or
complained of an active headache while at an office visit,"
Admin. Rec. at 439; (2) in May of 2012, during an office visit
with Dr. Durand, claimant reported his "headache stopped a few
weeks ago," id. at 440; (3) in August of 2012, claimant reported
that although they had returned, his headaches were "not as bad,"
id.; and (4) claimant engaged in activities of daily living,
including periodic efforts to work part-time, that the ALJ
thought were inconsistent with migraines of the severity claimant
asserted.  Based upon those observations, the ALJ concluded that
claimant's headaches were "relatively controlled" and had no more
than "a minimal effect on his ability to perform work-related
activities."  Id.

        While the court is hesitant to remand this proceeding for a
second time, it is constrained to agree with claimant's assertion
that the ALJ's determination at step two of the sequential
analysis (that claimant's headaches are not "severe") cannot be
sustained.  As noted above, claimant's burden at step two is, at
most, modest; the ALJ's analysis at that step is intended to do
no more than screen out patently groundless claims.  And, the

record amply supports the conclusion that claimant's complaints
of (potentially disabling) headaches are not patently groundless.
See generally Kalloch I.  First, there is no indication that
claimant is malingering or fabricating symptoms.  See, e.g.,
Admin. Rec. at 357, 376-66, 386, 1017.  See also Id. at 998
(noting that claimant was frustrated and tearful at times when
describing his efforts to live with chronic illness and his lack
of progress).  Relatedly, while there is no diagnostic testing
that might confirm the existence or intensity of claimant's
migraines, the many treating physicians he has seen over the
years all seem to have credited his reported symptoms, as well as
the intensity of the reported migraines, as truthful and
accurate.

    Moreover, despite what appears to have been fairly
aggressive medical treatment (with both non-prescription and
prescription medications), claimant's migraines (with periodic
photo-sensitivity and vision problems) have remained an issue.
While his symptoms wax and wane, they have never truly resolved
and continue to be an issue.  See, e.g., Admin. Rec. at 301, 303,
305, 307-09, 855, 864, 922, 961.  See also Id. at 326 (August,
2008, note from Dr. Geffken stating that claimant's "headaches
are increasing in intensity . . . [and] symptoms are greatly
impacting his life"); 376-77 (May, 2010, note from Dr. Windler

stating that claimant "does have what sounds like recurring
migraine headaches occurring about three to five times a month,
which may force him to go to bed anywhere from one hour to three
hours").

All (including the ALJ) acknowledge that claimant's
migraines are real.  The question is whether they are so minor -
so de minimus - as to have little or no impact on his ability to
perform work-related activities.  A substantial volume of
evidence in the record suggests that those migraines are
sufficiently severe to have required the ALJ to continue her
analysis beyond step two, and factor claimant's migraines into
her determination of a residual functional capacity.  Given the
substantial medical evidence showing claimant's long-term care
for this impairment (which has yet to resolve), it is probably
best to obtain the expert opinion of a medical professional -
either an independent medical examiner or one of claimant's
treating physicians - to determine the effect, if any, claimant's
migraines have on his ability to work.  See generally Manso-
Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st
Cir. 1996) ("With a few exceptions (not relevant here), an ALJ,
as a lay person, is not qualified to interpret raw data in a
medical record.  . . . [W]hen, as now, a claimant has
sufficiently put her functional inability to perform her prior

17

work in issue, the ALJ must measure the claimant's capabilities, and to make that measurement, an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.") (citations omitted).


### Conclusion

This dispute appears to have been distilled down to a single issue: whether claimant's migraine headaches are sufficiently severe to render him disabled.  The medical record establishes that they are at least sufficiently acute that the ALJ should not have resolved claimant's applications at step two of the sequential analysis.  Instead, she should have proceeded with that analysis (perhaps with the assistance of a medical expert) to determine claimant's RFC, whether his migraine headaches prevent him from performing any past relevant work, and, if so, whether they prevent him from doing any other work in the national economy.


For the foregoing reasons, claimant's motion to reverse the decision of the Acting Commissioner (document no. 13) is granted to the extent he seeks a remand for further proceedings related exclusively to the potentially disabling nature of his migraine

headaches.  The Acting Commissioner's motion to affirm her
decision (document no. 15) is denied.


     Pursuant to sentence four of 42 U.S.C. § 405(g), the
decision of the ALJ dated April 17, 2014, is vacated and this
matter is hereby remanded for further proceedings consistent with
this order.  The Clerk of Court shall enter judgment in
accordance with this order and close the case.


          **SO ORDERED.**

                              _____
                              Steven J. McAuliffe
                              United States District Judge

March 24, 2016

cc:  Raymond J. Kelly, Esq.
     Robert J. Rabuck, Esq.